United States v. Ridley Ms. Whitten. Honors, may it please the court. My name is Taylor Whitten, and I'm arguing on behalf of the appellant Donald Ridley as appointed counsel. There are four issues before you here on appeal. First, the district court's instructions to the deadlock jury is reversible error and requires a new trial. Second, the district court committed plain error in admitting Agent Mann's testimony and evidence concerning Ridley and Johnson's cell phone location and related mapping under federal rules of evidence 701, 702, and 602. Therefore, Ridley's conviction should be reversed and the matter should be remanded for a new trial. Third, there is insufficient evidence to convict Ridley of knowingly possessing, carrying, or using a firearm in furtherance of a crime of violence under 18 U.S.C. 924 C1A. Therefore, this court should reverse Ridley's convictions on count two and remand the matter for resentencing. Finally, there is insufficient evidence to convict Ridley of brandishing a weapon under 18 U.S.C. 924 C1A 2 and 4. Therefore, this court should reverse Ridley's conviction and remand the matter for resentencing. First, I would like to turn to the Silverne instruction. The district court's instructions in this case... Was there a request for a Silverne instruction at trial? There was not, Your Honor, but... You have the same problem as Mr. Weiner. You, of course, weren't trial counsel, so you can't improve the record in retrospect. But it does seem hard to berate the district judge for not giving an instruction no one wanted. That's correct, Your Honor, but the counsel below, unlike in the other case, did make a motion for mistrial. A motion for mistrial and a motion for supplemental instruction are totally different. Yes, but when there is a deadlocked jury, it is upon the judge to give the Silverne instruction when it's given before. So, therefore, in this case, the judge should have given, especially in light of the disputed evidence on Count 2 and the possession and brandishing charge, with a jury that's asking for help, asking... It states the jury is stuck on a verdict indicating a deadlock and cannot come to unanimous agreement. What should the jury do? Do we wait until a unanimous agreement is reached, or is there another option for the jury? Just so it's clear, the Silverne instruction had been given in the original set? That's correct. All right, and when this note comes along, it's your position that the judge had an obligation to do nothing more or less than reread the Silverne instruction, correct? That's correct, Your Honor. And as you know, in this circuit, Silverne has been the bedrock principle for over 40 years. It's not something that is flexible. Have we ever held that an instruction like, please continue to deliberate, is plain error? Your Honor, the government does... Have we ever held that it's error at all? I believe in this case it is, Your Honor, because... No, no, look, I asked a particular question. Have we held that such an instruction is plain error or error at all? Your Honor, you have not reversed based on just the statement, continue your deliberations, but that is not the case here. First of all, there are two separate components that make this different. In those cases that you are probably citing to, the jury did not ask the question... I'm not citing anything. I'm just asking whether we had ever held. You know, it's been my impression that the domain, that Silverne is a replacement for the Allen dynamite charge. And please continue to deliberate is not a dynamite charge. It's not a variation of a dynamite charge. And so one would wonder why Silverne would be given in lieu of it. But still, I'm trying to figure out what the scope of our review is given that we're here on plain error review. Well, first, Your Honor, I would argue that this is not on plain error review because there was a motion for a mistrial. So just proceed on that assumption. That will serve you best. Okay, Your Honor. If I am proceeding upon that assumption, then looking at the cases where they just said continue your deliberation, there was no question from the jury. That's different than what we have here. They're basically begging for a Silverne instruction by saying do we wait until a unanimous agreement is reached or is there another option for the jury? That's entirely different than just saying we're at a deadlock and the judge says please continue to deliberate. There is this coercive extra language that the judge gave that said in an effort to reach a unanimous verdict. How is this coercive? The judge said request, right, and make an effort. There's no command. And let me tell you what troubles me about this. I'm trying to imagine if we were to reverse this case on this theory and the case went before the U.S. Supreme Court. Silverne is not a rule of anything other than the management of the district courts in this circuit, right? That's correct, Your Honor. It's not constitutionally mandated or anything else, but it understandably seemed like a good idea some not quite 40 years ago. But I suspect if the Supreme Court were to look at this case, it would wonder where is there some prejudicial harm, some unfair danger to the defendant in this rather polite, mild, unobjected to request to make an effort to continue deliberations in an effort to reach a unanimous verdict. Well, Your Honor, I would argue that it was prejudicial. The reason that the Silverne instruction has become the bedrock of this circuit is because it has all the protective language that a juror needs to know when making a decision. And that the jury already heard, right? That's correct. Do they have written instructions with them? That's correct, Your Honor. But going back to my point before, if they had understood the instructions, they wouldn't have asked, do we wait until a unanimous agreement is reached or do we have another option? Because Silverne would outline correctly for them what they have to do, whereas here the judge picked one of the two options and said you must reach a unanimous verdict. No, he did not say that. He said in an effort. In an effort. It does seem like a mild and uncontroversial encouragement for them to keep on only three hours in. How long was the trial? The trial was three days, two days of evidence. All right, so he's expecting that they're going to be able to reach a verdict in a day, and after three hours they send him this note and he says continue deliberations in an effort. I think, again, your argument is that it's plain error for the district judge when he or she gets a note about a problem the jurors are having to do anything more or less than Silverne, reread Silverne. That's correct, Your Honor. That's what the principle has been for 40-some years in this circuit, and therefore should continue to be the principle, and if you hold differently, then you're chipping away at the Silverne instruction. In all the other cases cited by the government, all was said is please continue deliberations. They cite no case where there has not been some type of Silverne instruction read included in what the judge says. This would be entirely different, and it would be coercive and prejudicial in light of the disputed evidence for the gun charges as well as the other evidence presented at trial. If there wasn't disputed evidence, why would the jury come back with this question to the judge? Counsel, could I ask you about the cell phone testimony? Yes, Your Honor. Could the defendant have stipulated to the matters that Agent Mann's testified to? Will you repeat that, Your Honor? Could the defendant have stipulated to the facts that Agent Mann's testified to about the location of the defendant's and Mr. Johnson's cell phones? Yes, Your Honor. He could have stipulated. So if that's the case, why is this a plain error? Because as I understand it, no objection was made, right? That's correct, Your Honor. So we have, I've got to say, this strikes me as kind of the weakest sort of plain error argument when the defect that is noted in hindsight on appeal is something that could easily have been corrected at the time of trial by bringing in the other witnesses. That's correct, Your Honor, but then again, as we were talking about before, it's plain error because it affects his substantial trial rights. This cell phone evidence was used. He could just stipulate to this, right? But he didn't stipulate it to you, Your Honor. He could, but he also could raise an objection to which the government can respond by bringing in an agent who is tech savvy and who prepared the map, et cetera, and jam it down the defendant's throat, right? That's correct, Your Honor, but by presenting just this witness. And why would that be in the defense's interest? Your argument is that as soon as a non-expert begins to testify about cell tower information, it is the judge's job without request from the defense to cram an expert down the defense's throat. Even though the defense might prefer somebody who could be impeached as not very knowledgeable about this, the judge will force the prosecutor to bring in somebody who's non-impeachable. Why would that make defendants better off? Because without an expert presenting this testimony, there is no way to get behind and probe the witness. Exactly, and wouldn't a defense lawyer want that, want somebody on the stand who would admit, as this witness did admit, I'm not very tech savvy. Then you can tell the jury, this guy's a klutz, don't pay him much heed. But if the judge himself is going to force an expert on the defense, then that line of impeachment won't be available. That's the basis of my question, and I think Judge Hamilton's. How can this make the defendant better off to force the judge in every case to make sure there's an expert on this kind of testimony? Your Honor, because they were able to submit evidence that went to the jury to place the defendant at certain locations based on evidence that was carried back to them. That's exactly my question. As a rule, doesn't the defense want a weak witness rather than a strong one? You have two witnesses, they're going to say the same thing. One is subject to impeachment on the ground that he doesn't know what he's talking about. The other is not subject to impeachment on that ground. And your argument seems to be the defense would prefer the second kind of witness. And I'm afraid I don't get that. You're assuming the evidence is not coming in without this witness. That's correct. And I guess I'm not buying into that assumption either. I'm thinking it's coming in one way or another. If the government gets told you can't use this witness, they'll get somebody. And to my mind, there's this other issue that it's not all that highly technical. But let's assume that it is and you need an expert. You really are in a better position as defense counsel if you can say to the jury, look, that person doesn't know much more about this than you do. We don't have any reason to rely on that. It's an argument that would be foreclosed if you tell the government you're not going ahead without an expert and then they get one. The problem is he's proffering opinions about what this evidence means. He's placing the defendant at certain places because of this evidence that there is no credibility to it. He's basically reading from a map. That's a good argument for the defense. That evidence is going to be in. It's going to be in by Agent Manz or it's going to be in by an expert. Which one does the defendant want? Your argument seems to be the defendant wants this evidence in via an expert whose testimony is going to be bulletproof rather than in via somebody who can be impeached. Because Agent Manz was giving opinions that were expert-based. Therefore, under the federal rules of evidence, there should have been an expert giving that testimony. At least some courts have allowed non-experts to offer testimony like this, correct? That's correct, but they all had experience with either cell phones, worked for a cell phone company, had given evidence before about cell phones. They never admitted that they weren't tech-savvy in any respect. That's completely different. I see I'm running out of time, so I'd like to turn to the firearm argument quickly. There was no evidence that there was not enough evidence to prove that Ridley either possessed a firearm or brandished it. As you can see, the government brought upon a star witness who had signed a plea agreement, promised to tell the truth in Joe Johnson, and he stated he had no guns. This is indisputed evidence by two other eyewitnesses that there were guns coming towards the bank and Ryan Heck, who said there was only one gun, which is all consistent with Joe Johnson's other testimony. And even if you do find that Ridley possessed a firearm, there is absolutely no evidence that he brandished a firearm, which is a two-year enhancement. I thought at least Conley and another customer, Livesay was it? That's correct. They were certain that both robbers had guns. That's correct. And if they were certain, then they were displayed or brandished, right? Not necessarily because brandish is a higher level than just use. I don't know. If a customer in the bank robbery sees a gun, it's been brandished, right? Maybe it's to intimidate them. That's how robbery works, right? Perhaps she said he sat down the gun, so that's not, in my mind, brandishing because it has to be used to intimidate. You've got to display or otherwise make the presence of the firearm known to another person in order to intimidate that person. Presumably the gun was still within his reach as opposed to anyone else's. It may have been the other. Why can't the jury simply rely on the two customers who said both robbers had guns? Because the evidence, it can't be just a little bit of evidence. It has to be reasonable juror consent. One witness is enough, right? If it's not disputed, perhaps. Two witnesses in the trial. Witness A says the defendant committed the crime. Defendant testifies I didn't. The jury can convict, right? That's correct, Your Honor, if that was the case. How is this any stronger a case for the defense? Because the two eyewitnesses had muddled evidence that there were two guns. The two guns were claimed by Johnson. When the government brought on their star witness, they were utterly surprised when he said Ridley had no guns. And instead of constructing a theory of constructive possession or aiding and abetting, they failed to do so. And that's not enough to convict on brandishing, which is a heightened sentence. Thank you, Your Honor. Thank you. Thank you, Counsel. Ms. Derbaro. Yes, may I please report? Counsel, Deirdre Derbaro, Assistant United States Attorney out of the Southern District of Illinois. In turning to the first issue, the jury note, I think that the way that you put it, Judge Hamilton, that the note was polite, mild, and unobjected to is exactly correct. And, in fact, that's the way this district judge, who's highly experienced, read the note to the jury. So it was within his discretion to decide whether or not the jury was deadlocked. The jury went out at approximately— Actually, let's—I'm actually troubled by that part of your brief, where you're arguing the jury was not actually deadlocked. The phrasing in the note was, what, we're stuck? The jury is stuck on a verdict and cannot come to a unanimous agreement. And you seem to be arguing that's not enough to invoke the Silver Rule, right? And I'm, frankly, troubled by that. Well, I think the court looked at, obviously, the content of the note, and part of the note gave the court pause to believe that they weren't deadlocked. And— Well, no, not finally deadlocked. Correct. Not to the point that you just give up and declare a mistrial, obviously. But the notion that a judge—if your argument is correct, and the defense had asked that any response be a silver instruction, your theory is the judge has discretion not to give it. I think the judge has the discretion to decide whether or not, in his judgment, based upon the note, as well as other factors, the jury's deadlocked. That drives a truck through the Silvern rationale, right? The jury's saying we're stuck. Well, I think that— Silvern says, don't mess around with innovations, read this instruction to them. Well, we have appellate review of district court judges and their rulings, and— Suppose the district judge had said, I conclude that the jury is not deadlocked, but in the exercise of caution, I'm going to give an Allen charge. And then he just repeats the language from Allen. Do you think that would be reversible error? If they—perhaps if it had not been given initially? No one gives an Allen charge initially. Well, or a Silvern instruction initially. Yes, I think there probably would be a problem with it. I think the judge can book it. It would come back with wheels under it, counsel. Well, perhaps it would by this court, or any other court. But the bottom line is, the judge looked at— Silvern's unique. The judge looked at the length of time that they had deliberated, which was incredibly short. It was also over a lunch break, albeit no one knew whether or not they were continuing deliberations over that lunch break. I think those are things that play to factor into it. They obviously are highly relevant in deciding how you respond. Do you give any answer at all? And obviously figured into Judge Herndon's crafting of this note, without a request for a Silvern instruction from the defense. But I've got to say, I'm very, very troubled by this idea that when the jury says we're stuck, the judge can decide on his or her own, I don't think so, and do something other than give a Silvern instruction. But the jury asked, you know, should we continue to deliberate? Is there another option? Right. So they were kind of throwing the line out there that we're not done. We're willing to work. And the court politely asked them, and it did not demand or command. So what standard would you have apply? To such notes from juries in deciding whether Silvern applies or not? When does a district judge have discretion under your theory not to give a Silvern instruction when the defense asks for it? I think based upon the factors that how strong the note is written, we're absolutely deadlocked. We're hung. We're tired of this. We've been deliberating three days. You know, when they've been out for less than three hours with five counts, with multiple witnesses, with certain things at issue, I think that this is why you give district court judges some discretion. That's the discretion to decide whether to declare a mistrial. And here it obviously would have been way premature for exactly all those reasons. But that's not what Silvern is about. Had the judge on his own given Silvern at this point without being asked by anybody to do it? Had the judge been asked? Had the judge, I mean, had that happened? Oh, had he given it? Yeah, you wouldn't have viewed that as improper. No, no, absolutely not. Whether or not it was within his discretion, certainly the instruction he gave was not prejudicial, coercive. And did not influence. So, therefore, this court should find that there was no error. In turning to the second issue, the cell phone testimony, I think that this wasn't a highly savvy tech issue. This was simply records that any layperson, in fact a child, could read and determine date, time, person. Agent Manns was testifying about, you're not saying this comes in over an objection, are you? I'm saying that Agent Manns is a humble agent that used the word. If the defense had raised a hearsay objection, are you saying it should have been overruled? Since Manns is presenting a map that somebody else has prepared for him, based on information that he doesn't really understand? No, first off, Agent Manns did understand the information. I think that needs to be clarified. He understood the information and it was not highly technical or difficult for him to understand. So, he had a basis to talk about this information. And he explained how the information aided his investigation, how it led to the co-defendant. So, the information, in and of itself, was more than the content of the information. He explained what he did with that information. Was he capable of preparing the map? Absolutely, he would have been capable of preparing it. From the original records? Yes, from the original records, he could have prepared that map. What had occurred was, the map was made almost immediately, as soon as the records were obtained. The robbery occurs May 7th of 2008. Records are obtained on an emergency order. They're turned over to another agent to prepare those records so that Agent Manns and other agents can go pursue other leads. It's not that he couldn't have done it. He could have very well did it. It was already done. And as I said, this was not, in fact, Agent Manns explained it twice, that it's self-explanatory information. When you look at the cell records themselves, time, date, number called, location, you plug it into Google Maps, it's going to print it out. It's not highly technical. And then finally, turning to the last issue, the government had proven, and as the court is well aware, that this has been a light most favorable to the government, the government had proven, in fact, the defendant possessed a gun. And the court is right. One credible witness can, in fact, carry the day on that. And Kimberly Conley testified that she saw both defendants enter the banks with the guns pulled and displayed. She watched them during the entire robbery. She sat back and watched them. So she clearly had the best view. And interestingly enough, Ms. Conley was able to testify that because she had been a victim before and didn't want to be a victim again, she had a keen sense of paying attention. So that one witness would have been enough. However, the other witness, Michelle Livesay, also saw both individuals with firearms. So they both had firearms. So I think the government proved it by possession. Not only did we prove it by possession, we proved it by constructive possession, that the defendant had the power to exercise dominion control either directly or indirectly over his co-defendant. The co-defendant's job, Joe Johnson's job, was to secure the place. They had discussed it the night before. They discussed it immediately before going in. A takeover robbery is a division of labor. The defendant's job was to get to the teller boxes and to get to the vault. The co-defendant's job was to secure the place, which means I'm going to secure it with a weapon. So we also proved it by constructive possession. We certainly proved it under Pinkerton theory, that a co-conspirator possesses a gun and that it's reasonably foreseeable. They had discussed this. They knew about it. They knew they would need guns to pull it off. And finally, we also proved it under aiding and abetting that the defendant actively participated in advance knowledge that the co-defendant would use a gun. So the government proved it literally, I think, on every single theory it could have been proven under. Was the jury instructed on Pinkerton? The jury was given the standard 924C jury instruction, the pattern instruction in reference to it. So was the... My question is whether the aiding and abetting or Pinkerton theories were presented to the jury. Yes, they were. And instructions were definitely given on aiding and abetting, and I believe likewise on Pinkerton. Okay. Were there any Rosemond-type issues about the aiding and abetting instructions? None presented or argued, no. At this time, the United States would ask that the court affirm the judgment in the sentence of this defendant. Thank you. Thank you. Thank you very much. Ms. Whitman, the court appreciates your willingness and that of your law firm to accept the appointment and the assistance you've given to the court as well as your client. The case is taken under advisement.